IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA - GAINESVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>DK PROPERTIES LLP,<br>        Debtor. | CASE NO. 21-20009-jrs<br><br>CHAPTER: 11<br><br>JUDGE: HONORABLE JAMES R. SACCA<br><br><br><br>CONTESTED MATTER |

**RESPONSE TO DEBTOR'S MOTION FOR AUTHORITY
TO USE OF CASH COLLATERAL; FOR AUTHORITY TO PAY
ADEQUATE PROTECTION; AND FOR EMERGENCY HEARING**

First Commerce, LLC ("Creditor" or "First Commerce"), by and through its undersigned counsel, as secured creditor of the above-entitled Debtor, DK Properties ("Debtor") hereby submits the following *Response to Debtor's Motion for Authority to Use of Cash Collateral; For Authority to Pay Adequate Protection; and For Emergency Hearing* ("Response").

      **I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

**A. THE LOANS**

    1.    First Commerce is a creditor of the above-referenced debtor holding two loans secured by Real Property. The Subject Loans contain an Assignment of Rents provision granting Creditor a security interest in the rental income generated by the real properties.

    2.    The first loan is secured by Real Property known as 138 Park Ave., Widner, Georgia. Pursuant to the terms of the Note (as well as subsequent renewals and/or modifications), Loan 1 matured on January 5, 2019 ("Loan 1").

3. As noted in the Notice of Default and Opportunity to Cure dated August 5, 2020 ("Notice of Default 1"), the amount necessary to satisfy the loan was $1,962,109.48 as of July 30, 2020. A copy of the Notice of Default is attached as Exhibit 1.

4. Prior to maturity, the monthly payment on Loan 1 was $8,556.24.

5. First Commerce last received a voluntary payment on this loan May 18, 2020.

6. First Commerce exercised its Assignment of Rents in November 2020 and began to receive rent from tenants.

7. On or about November 6, 2020, First Commerce advanced the sum of $45,850.38 in delinquent 2019 property taxes and due 2020 property taxes to protect its security interest.

8. First Commerce holds a second loan ("Loan 2") secured by a .51-acre commercial lot located in Statham, Georgia.

9. Pursuant to the Note (and subsequent Renewals and/or Modifications), Loan 2 matured on January 5, 2019.

10. Prior to maturity, the monthly payment for Loan 2 was $368.43.

11. First Commerce received the last voluntary payment from Debtor on May 18, 2020.

12. As stated in the Notice of Default and Opportunity to Cure dated August 5, 2020 ("Notice of Default 2"), the amount necessary to cure the default and satisfy Loan 2 was $67,231.23 as of July 30, 2020.

13. On or about November 6, 2020, First Commerce advanced $1,838.60 to pay delinquent 2019 property taxes and due 2020 property taxes to protect its security interest.

**B.    THE LOAN STATUS**

14. As previously indicated, both Loan 1 and Loan 2 matured on January 5, 2019.

15. First Commerce caused to be sent Notices of Default and Opportunity to Cure for Loan 1 and Loan 2 on or about August 5, 2020.

16. First Commerce has not received a voluntary payment from Debtor since May 2020 and has had to advance for delinquent and due property taxes to protect its security interest.

## C. THE INSTANT BANKRUPTCY CASE

17. On January 4, 2021, Debtor filed the instant voluntary petition under Chapter 11 of the Bankruptcy Code in the Northern District of Georgia and was assigned bankruptcy case number 21-20009(the "Bankruptcy Case").

18. On January 4, 2021, Debtor filed its *Motion for Authority to Use of Cash Collateral* (this "Cash Collateral Motion"). (Dkt No. 5). Through the Cash Collateral Motion, Debtor seeks authorization to use cash collateral generated by the Property as outlined in a proposed Budget. (Motion, Exhibit A). Debtor seeks court authority to use the monthly rental income to maintain the Property and pay necessary expenses..

19. Debtor proposes to pay First Commerce "adequate protection payments" based on an interest rate of 3.5% on a balance of $1,500,000 or $4,688/month.

20. Creditor now submits its Response to the Cash Collateral Motion:

## II. ARGUMENT

### A. CREDITOR HAS A SECURITY INTEREST IN THE CASH COLLATERAL GENERATED BY THE BUSINESS

21. A Chapter 11 debtor is prohibited from using cash collateral without court authorization and/or consent from the lender. 11 U.S.C. § 552(b) provides:

> Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, products, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and the applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Moreover, 11 U.S.C. § 363(a) provides:

> In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, product, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before of after the commencement of a case under this title.

21. The Bankruptcy Code unequivocally prohibits a debtor from using cash collateral unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use. 11 U.S.C. §363(c)(2). There is no affirmative duty for creditors or the court to raise the issue. Rather, *a debtor* is required to obtain permission *before* using cash collateral.

22. In the instant case, an Assignment of Rents provides First Commerce with a security interest in the cash generated by the Property. In other words, Creditor holds a security interest not only in real estate itself, but in the rent derived from the Property. Pursuant to 11 U.S.C. § 363(a), Debtor is prohibited from using the income without court authorization or creditor consent. While Creditor does not oppose the Debtor's use of cash collateral to pay necessary expenses associated with the Property, Creditor opposes the Debtor's proposed Budget and the proposed amount of adequate protection payments.

23. First, Creditor objects to the proposed Budget, which fails to offer sufficient adequate protection payments to Creditor. While the Debtor includes an amount for taxes, Creditor (not the Debtor) has maintained taxes for both properties for the delinquent 2019 installment and due 2020 installment. Borrower/Debtor have failed to make a payment since May 2020 and both Loan 1 and Loan 2 became due and payment in full on January 5, 2019.

24. Second, Debtor's budget contemplates monthly net income throughout 2021 ranging from $13,720 in January 2021 to $32,609 in October 2021, which is sufficient to tender contractual payments to Creditor

25. Prior to the Loan 1 and Loan 2 maturing, the contractual monthly payment was $8,556.24 and $368.43 respectively.

26. Given Debtor's failure to timely pay property taxes jeopardizing First Commerce's security interest in the Real Property, Debtor should be required to pay the contractual monthly payment to protect First Commerce from further harm.

27. This is especially so given that Debtor's own proposed budget seems to contain excess net cash per month enabling Debtor to do so.

28. Third, the Cash Collateral Motion fails to include evidence to support the alleged income and expenses. The proposed income and expenses listed in the Budget are unsupported by contracts, receipts, invoices, or cash flow statements. Creditor objects to the payment of any expenses unrelated to the Subject Property, including the payment of Debtor's attorneys' fees. Further, Creditor seeks clarification regarding the monthly "management fees" and "miscellaneous fees" included in the Budget. To the extent the management fee is being paid to the Debtor's principal, Creditor objects.

29. Fourth, and as additional adequate protection for the Debtor's use of any cash collateral of Creditor, Creditor requests that any Order granting the Motion provide that Creditor shall be granted replacement lien(s) in the Debtor's post-petition cash, accounts receivable and inventory, and all proceeds thereof, to the same extent and priority as any duly perfected and unavoidable liens in cash collateral held by Creditor as of the Petition Date.

30. Fifth, Debtor has failed to demonstrate the Property value is stable and not subject to decrease during the Bankruptcy Case. In *Timbers*, the Court acknowledged a creditor's interest in property includes "the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay." *United States Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365 (1988). The phrase "interest in property" in § 363(e) means the value of the collateral. If that value is likely to diminish during the time of the use, adequate protection must be provided by debtor. As the Supreme Court stated in *Timbers*, "thus, it is agreed if the apartment project in this case had been declining in value petitioner would have been entitled, under § 362(d) (1) to cash

payments." *Id.* Under § 361, adequate protection can be provided in the form of (1) periodic cash payments.

30. Sixth, Creditor requests the Debtor's cooperation in granting access to the Property for inspection and valuation.

31. Seventh, Creditor requests that the Debtor immediately segregate any income produced by the Property in a separate debtor-in-possession account to avoid commingling with and personal accounts of the Borrower or other secured collateral.

32. Finally, to the extent the Debtor's principal is using any of the cash collateral for personal expenses, Creditor opposes the same and requests the Court prohibit the Debtor from allowing any payment to the Debtor's principals, insiders, or attorneys.

**WHEREFORE**: Creditor respectfully request:

1. That the Court deny the Motion to Use Cash Collateral;
2. That the Court prohibit the use of cash collateral for any purpose, including for any personal expenses of the Debtor's principals;
3. That the Court Order the Debtor to provide an accounting of all income generated by the Property from the petition date to present;
4. That the Court Order the Debtor to turnover all income generated by the Property from the petition date to present to Creditor;
5. That the Court Order Debtor to commence contractual adequate protection payments (at amount owed prior to maturity of the Notes) to Creditor less approved necessary expenses;
6. That the Court Order the Debtor to file an amended Budget for the Property of income and expenses for the past six months and next six months, supported by contracts, receipts, invoices, or cash flow statements;
7. That the Court Order the Debtor to provide copies of any leases or rental agreements associated with the Property;

8. That the Court Order Debtor immediately segregate any income produced by the Property in a separate debtor-in-possession account;

9. That the Court Order Debtor to grant Creditor access to the Property for purposes of inspection/valuation of the collateral;

10. That Creditor shall be granted replacement lien(s) in the Debtor's post-petition cash, accounts receivable and inventory, and all proceeds thereof, to the same extent and priority as any duly protected and unavoidable liens in cash collateral held by Creditor as of the Petition Date; and

11. Such other relief as the Court deems just and proper

Dated: January 6, 2021

/s/ Brian K. Jordan
Brian K. Jordan, Bar No.: 113008
Attorney for Creditor
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: bjordan@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA - GAINESVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>DK PROPERTIES LLP,<br>Debtor. | CASE NO. 21-20009-jrs<br><br>CHAPTER: 11 |

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the January 6, 2021, I served a copy of Response to Debtor's Motion for authority to Use of Cash Collateral; for Authority to Pay Adequate Protection; and for Emergency Hearing

which was filed in this bankruptcy matter on the January 6, 2021, in the manner indicated:

**The following parties have been served by the Court by the virtue of their participation in the CM/ECF system**:

Charles N. Kelley, Jr.
ckelley@kelleyclements.com

United States Trustee
David S. Weidenbaum
david.s.weidenbaum@usdoj.gov

**The following parties have been served via e-mail**:

DK Properties LLP, a Georgia limited liability partnership
Attn: H. David Smith
PO Box 0
Winder, GA 30680

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

/s/ *Brian K. Jordan*
Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: bnoel@aldridgepite.com